**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DALE W. THORPE and RENEE M. THORPE,** : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 14-6154** |
| : | |
| : | |
| **UPPER MAKEFIELD TOWNSHIP,** *et al* : | |
| **Defendants.** : | |

<u>**MEMORANDUM OPINION**</u>

Rufe, J.                                                                                    **November 5, 2015**

Plaintiffs, Dale and Renee Thorpe, have sued Upper Makefield Township, the Upper

Makefield Board of Supervisors, and several individual Township officials.[1]  The Thorpes, who

own a 146-acre property in the Township, allege that Defendants have discriminated against

them on the basis of ethnicity in violation of their rights under the Due Process and Equal

Protection Clauses of the Fourteenth Amendment; and have committed the state-law torts of

abuse of process and tortious interference with contractual relations.  Defendants have moved to

dismiss the Complaint, or in the alternative, for Summary Judgment.  For the reasons stated

below, the motion will be granted in part and denied in part.

The Complaint alleges that since the Thorpes purchased Thorpe Farm in 2007,

Defendants have acted to deny Plaintiffs the ability to obtain the highest economic use of Thorpe

Farm by preventing the Thorpes from launching a deer-processing operation, requiring extensive

repairs and renovations to the Farm Store, forcing the Thorpes to shut shown dirt-processing and

---

[1] The Complaint names Upper Makefield Township; Upper Makefield Township Board of Supervisors, Thomas F. Cino, Chairman, Larry S. Breeden, Vice Chairman, Mike Tierney, Dan Rattigan, and Mary Ryan; David A. Kuhns, Upper Makefield Township Director of Planning and Zoning; and John C. Kernan, Upper Makefield Fire Marshal.  Defendants Cino, Breeden, Tierney, and Rattigan have been dismissed by agreement of the parties.

composting operations, preventing the operation of an annual Halloween attraction, and denying an application for funds from the Riparian Buffer Fund to repair stream banks and prevent erosion.  Plaintiffs also allege they were cited for allowing buildings to be used for storage by contractors in violation of local zoning ordinances against commercial storage, even though the prior owner of Thorpe Farm and the owners of other farms engaged in the same conduct without sanction.

## II.    LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[2]  In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[3]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[4]  Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[5]  The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[6]  In deciding "a motion to

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[3] *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll*., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[4] *Twombly*, 550 U.S. at 555, 564.

[5] *Id.* at 570.

[6] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[7]

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[8] "[M]otions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment."[9] "Whether or not to treat the motion [to dismiss] as a motion for summary judgment by considering the outside materials attached thereto is a matter of discretion for the court."[10] In exercising the Court's discretion, conversion to a motion for summary judgment is "not warranted where there has been little or no discovery conducted by the parties" because "the parties may not be able to present enough material to support or oppose a motion for summary judgment since no factual record has yet been developed."[11]

If the motion is converted, summary judgment on a claim or part of a claim is warranted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] A fact is "material" if resolving the dispute over the fact "might affect the

---

[7] *PBGC. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[8] Fed. R. Civ. P. 12(d).

[9] *Carver v. Plyer*, 115 F. App'x 532, 536 (3d Cir. 2004).

[10] *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. 1994). *See also* Wright & Miller Civil Practice 3d § 1366.

[11] *Brennan*, 850 F. Supp. at 335.

[12] Fed. R. Civ. P. 56(a).

outcome of the suit under the governing [substantive] law."[13] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[14]

Having considered the parties' submissions, the Court concludes that the motion will be ruled upon according to the standards of a motion to dismiss, not summary judgment. The parties had no opportunity to conduct discovery before Defendants filed their motion, and given the fact-specific nature of many of the allegations, it would be inappropriate for the Court to assess the case on a summary judgment basis without any development of the record. Moreover, as will be discussed below, many of the exhibits that Defendants attach are not self-authenticating and are not supported by affidavit or other testimony, and therefore cannot provide a proper basis for summary judgment.

## III. DISCUSSION

### A. Equal Protection (Count I) and Due Process (Counts II and III)

The Fourteenth Amendment to the Constitution, through the Equal Protection and Due Process clauses, protect citizens from arbitrary, capricious, and unequal treatment by state actors.[15] "The Equal Protection Clause 'prohibits selective enforcement of the law based on considerations such as race.'"[16] Here, Plaintiffs allege that they have been intentionally treated differently from other similarly situated landowners because Dale Thorpe is Native American, and that there is no rational basis for the difference in treatment.[17] "Persons are similarly

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[14] *Id.*

[15] U.S. Const. amend XIV; 42 U.S.C. § 1983.

[16] *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).

[17] *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

situated under the Equal Protection Clause when they are alike in all relevant aspects."[18]  The

question is whether Plaintiffs "allege facts sufficient to make plausible the existence of . . .

similarly situated parties."[19]

       The Due Process Clause provides that a state actor may not "deprive any person of life,

liberty, or property, without due process of law."[20]  To state a claim for denial of procedural due

process a plaintiff must allege the deprivation of a protected property interest and that the

procedures available were constitutionally inadequate to provide due process of law.[21]  A claim

for substantive due process arises where the plaintiff alleges a deprivation of a protected property

interest by executive action that is arbitrary, or conscience shocking, in a constitutional sense.[22]

The enforcement of a regulation against one landowner but not another does not shock the

conscience unless it is done with an improper motive, such as self-dealing, racial bias, or is

otherwise the "most egregious official conduct."[23]  The Complaint does not specify whether the

claims are based upon violations of substantive or procedural due process; however, Plaintiffs

have not alleged the absence of state-law remedies for any adverse zoning and land-use decisions

---

[18] *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (internal citations and quotation marks omitted).

[19] *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011).

[20] U.S. Const. amend XIV, § 1.

[21] *See Vurimindi v. City of Phila.*, 521 F. App'x 62, 65 (3d Cir. 2013); *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011).

[22] *Connection Training Serv. v. City of Phila.*, 358 F. App'x 315, 319 (3d Cir. 2009); *Gottlieb v. Laurel Highlands School Dist.*, 272 F.3d 168, 172 (3d Cir. 2001).

[23] *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285-86 (3d Cir. 2004) (internal quotation omitted).

and in their opposition to Defendants' motion, Plaintiffs clarify that they are proceeding under a theory of substantive, not procedural, due process.[24]

Plaintiffs have stated a claim against the Defendants Kuhns and the Township, by alleging, for example, that Defendant Kuhns threatened legal action against them, including on the ground that buildings at Thorpe Farm had been used for storage by contractors, even though the buildings had been so used before Plaintiffs purchased Thorpe Farm, and that other farms, specifically Slack Farms and Active Acres, had buildings used for storage by contractors without the threat of legal action against them.[25]  Plaintiffs also allege a pattern of consistent harassment against them by Defendant Kuhns on all manner of zoning issues that prevented them from operating Thorpe Farm profitably and that were motivated by racial bias; assuming for purposes of the motions to dismiss that the allegations are true, the allegations raise an inference of improper action by Defendant Kuhns in the service of the Township.[26]  These are specific allegations of disparate treatment, not unsupported generalizations, and they state a claim.[27]

---

[24] Plff.'s Mem. Opp. [Doc. 25-2] at 16  n.4.

[25] Compl. ¶ 24.

[26] Defendants argue that all of the actions against Plaintiffs were justified.  For example, Defendants contend that Plaintiffs' allegations of interference with the deer processing operation fail to state a claim because the Township, by letter from Defendant Kuhns, simply stated that Plaintiffs needed to provide the Township with a copy of the certification and license required by the Pennsylvania Department of Agriculture to operate a deer processing establishment. Compl. Ex. 2. The letter reads in relevant part that "Signage has been installed advertising Deer Processing.  This service is provided in the same building where your produce stand is.  The PA Department of Agriculture requires certification and licensing of individuals providing this service.  A copy of your certification and license must be provided to the Township." To support the argument that Plaintiffs required a license, Defendants have submitted what purports to be a document from the Pennsylvania Department of Agriculture. Defs. Ex. G.  However, the document is not a regulation or statute, is not self-authenticating, and the Court cannot determine in any event whether it applies to Plaintiffs, as it is directed to "Dear Owner of a Deer Processing Establishment," and discusses when participants in the "Hunters for Sharing the Harvest program" must obtain a registration from the Department as a "custom deer processor." *Id.* (emphasis omitted).  On the current record, the Court cannot determine whether or not Mr. Kuhns's assertion in the letter is an accurate statement of Pennsylvania law.  As Plaintiffs have stated a claim, the Court need not at this time examine whether every instance alleged in the Complaint is actionable; such questions are better decided upon a developed record.

[27] *Burnett v. Springfield Twp.,* No. 13-1646, 2014 WL 3109963, at *6 (E.D. Pa. July 8, 2014).

Plaintiff also has alleged self-dealing against Defendant Mary Ryan, who was elected as a Township Supervisor in 2009.  Plaintiffs allege that before the election, Defendant Ryan's husband offered to buy part of Thorpe Farm, and that after Plaintiffs rejected the offer, Defendant Ryan expressed in an email her intentions to condemn Thorpe Farm and rezone it.[28] Defendants argue that the email was satirical in nature, and although the overall tone of the email lends some support to this contention, the Court cannot draw such a conclusion in the context of a motion to dismiss.

However, Plaintiffs have failed to state a cause of action against Defendant Kernan, and the claims against this Defendant will be dismissed.  The Complaint alleges the following with regard to Defendant Kernan:  that he, along with Defendant Kuhns, failed to inform Plaintiffs about the requirements for the haunted house event;[29] that "after overcoming numerous obstacles created by Defendants unrelated to the safety of occupancy of the Farm Store, the Thorpes obtained approval from Kernan to re-open the Farm Store;"[30] and that Defendant Kuhns stated that the fire marshal had not yet approved the plot plan for the hay ride event.[31]  In none of these instances is there any allegation of wrongdoing by Defendant Kernan as opposed to Defendant Kuhns.

Plaintiffs also have stated a claim with regard to Count III, which is directed specifically to the enactment in October 2007 of an Amendment to the Joint Municipal Zoning Ordinance

---

[28] Compl. at ¶ 17 & Ex. 7.

[29] Compl. at  ¶ 30.

[30] Compl. at ¶ 15.

[31] Compl. at ¶ 36.

("JMZO") that required events be at least 150 feet from public right-of-way.[32]  The Thorpes allege that the ordinance, passed only a few months after they purchased Thorpe Farm, was directed at them for an improper purpose.  Defendants argue that the ordinance was first proposed in 2006, before Plaintiffs purchased the farm, but this raises a factual dispute not properly resolved on a motion to dismiss.[33]  Although it is not clear whether this Count is directed to the individual Defendants as well as the Township, there are no allegations to suggest that Defendant Kernan had any role in the amendment.

### B.    Abuse of Process (Count IV)

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[34]  In order to show "use" of process, the plaintiff must allege "some definite act or threat not authorized by the process."[35]  Under Pennsylvania law, actionable process "includes the entire range of procedures incident to the litigation process," such as "discovery proceedings, the noticing of depositions and the issuing of subpoenas."[36] As these examples illustrate, the tort of abuse of process is limited to

---

[32] Compl. at ¶ 30.

[33] Def. Ex. F.  This document purports to be a draft JMZO from 2006.  Again, this exhibit is not self-authenticating, and the only suggestion as to the date is a notation at the top reading "JMZO No. 2006-05."  Even if the Court were to consider the document itself at this time, the reasons why the ordinance was not adopted in 2006 and why it was adopted in 2007 may be relevant to Plaintiffs' claims.

[34] *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).

[35] *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998) (internal quotations omitted).

[36] *Rosen*, 627 A.2d at 192 (internal quotations omitted).

"misuse of *the court's power* of process" and therefore "[a]ctions taken without the use of the court's process power fail to state a claim."[37]

In this case, it is unclear to which Defendants the claim is directed, but in any event, Plaintiffs have failed to allege the misuse of a court's power of process.  Plaintiffs allege that Defendant Kuhns wrongfully issued numerous citations and initiated two civil complaints in the form of non-traffic citations.[38]  However, an "onslaught of citations, including targeting Plaintiffs with municipal ordinance" does not constitute abuse of process.[39]  Moreover, "there is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion."[40]  Plaintiffs allege no more than the issuance and filing of the citations, and that the filed citations were withdrawn or settled.  As no claim for abuse of process has been stated, Count IV will be dismissed.[41]

### C.    Tortious Interference with Contractual Relations (Count V)

To state a claim for tortious interference with existing or prospective contractual relations under Pennsylvania law, a plaintiff must plead: 1) the existence of a (prospective) contractual relationship between the plaintiff and a third party; and 2) purposeful action by defendant to

---

[37] *Morris v. Scardelletti*, No. 94-3557, 1994 WL 675461, at *11 (E.D. Pa. Nov. 23, 1994) (emphasis added); *see also Restatement (Second) of Torts* § 682, Reporter's Note (citing *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc.*, 358 F. Supp. 17 (E.D. Tenn. 1972) *aff'd* 477 F.2d 598 (6th Cir. 1973); *Barquis v. Merchants Collection Ass'n*, 496 P.2d 817, 826-27 (Cal. 1972) (holding that a complaint knowingly filed in an inconvenient venue is actionable process); *Jones v. Brockton Public Markets, Inc.*, 340 N.E.2d 484 (Mass. 1975)).

[38] Compl. at ¶¶ 41, 58.

[39] *Reinsmith v. Borough of Bernville*, No. 03-1513, 2003 WL 22999211, at *7 (E.D. Pa. Dec. 16, 2003).

[40] *Cameron v. Graphic Mgmt. Assocs., Inc*., 817 F. Supp. 19, 21 (E.D. Pa. 1992) (citing *Shaffer v. Stewart*, 473 A.2d 1017 (Pa. Super. Ct. 1984)).

[41] *Godshalk v. Borough of Bangor*, No. 03-1465, 2004 WL 999546, at *13-14 (E.D. Pa. May 5, 2004).

interfere with that (prospective) relationship; 3) without privilege or justification; 4) causing legal injury.[42]

Again, it is not clear against which Defendants this claim is directed.  However, for the reasons explained in connection with the constitutional claims, Plaintiffs have stated a claim against all Defendants except Defendant Kernan and the Township.  Defendants argue that this claim should be dismissed because they acted under their duty to determine whether the uses to which the Thorpes sought to put the property complied with the law, and that the state statute requires zoning officers to "administer the zoning ordinance in accordance with its literal terms."[43] Whether the zoning ordinance has been properly enforced, against the Thorpes and others, is precisely the question raised by this lawsuit and cannot be resolved without a factual record.

Defendants also argue that this claim is barred by Pennsylvania's Political Subdivision Tort Claims Act.[44]  The Court agrees that the claim cannot proceed against the Township.  However, an employee is not immune under the Tort Claims Act where "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct."[45]  The gravamen of Plaintiffs' Complaint is that Defendants acted deliberately and maliciously to harm them, and the claim cannot be dismissed at this time against Defendants Ryan and Kuhns.

---

[42] *CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).

[43] 53 P.S. § 10614.

[44] 42 Pa. C.S. §§ 8541-42.

[45] 42 Pa. C.S. § 8550.

### D.      Individual or Official Capacities

As Defendants point out, the Complaint does not clearly state whether Defendants Kuhns and Ryan are sued in their individual or official capacities, or both.  The Court can consider all of the relevant allegations to determine in what capacity Defendants are sued.[46]  Plaintiffs named the offices held by the Defendants, which indicates an intention to sue in their official capacities, and also seek punitive and compensatory damages, which indicate that they intend to sue Defendants in their individual capacities as well, as punitive damages cannot be recovered from defendants in their official capacities.  Therefore, upon consideration of all the relevant allegations in the Complaint, the Court finds that Plaintiff has named these Defendants in both their individual and official capacities.[47]

### E.      Qualified Immunity

The individual Defendants move for summary judgment on the basis of qualified immunity, which requires the Court to determine (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct.[48]  As discussed in connection with the due process claims, if Defendants acted with discriminatory intent against Plaintiffs or for reasons of self-dealing, they would not be entitled to qualified immunity.  The Court cannot make this determination on the current record.

---

[46] *Moore v. Cuttre*, No. 09-2284, 2010 WL 2557682, at *2 (D.N.J. June 23, 2010) (citations omitted).

[47] *Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988).  Defendants contend that the official-capacity claims are redundant as the Township has been sued.  *See Kentucky v. Graham*, 473 U.S. 159, 166 n. 14 (1985). The Court does not find redundancy justifies dismissal at this time; the appropriate status of the parties, and the assertion of punitive damages, will be clarified once the record is developed. *See Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003).

[48] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

11

**IV.      CONCLUSION**

As discussed above, the claims against Defendant Kernan are dismissed, Count IV is dismissed against all Defendants, and Count V is dismissed as to the Township. The motion to dismiss is otherwise denied.  An order will be entered.