## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DALE W. THORPE and RENEE M.** | : | |
| **THORPE,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 14-6154** |
| | : | |
| | : | |
| **UPPER MAKEFIELD TOWNSHIP,** *et al*. | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION

**Rufe, J.**                                                                                                   **September 25, 2017**

Plaintiffs, Dale and Renee Thorpe, filed suit alleging that after they purchased a 149-acre

property in Upper Makefield Township, they were discriminated against on the basis of ethnicity

in violation of their rights under the Due Process and Equal Protection Clauses of the Fourteenth

Amendment and suffered tortious interference with contractual relations.  The parties having

conducted discovery, the remaining Defendants, the Township and David A. Kuhns, the

Township Director of Planning and Zoning, have moved for summary judgment on all claims,

which Plaintiffs opposed.

### I.     BACKGROUND

The parties have stipulated to many of the relevant facts.[1]  Where the facts are disputed,

they are viewed in the light most favorable to Plaintiffs as the non-moving parties.  Plaintiffs

purchased Thorpe Farm in 2007, from Dale Thorpe's second cousins.  Dale Thorpe is Native

American (the record does not reveal whether the former owners of Thorpe Farm are also Native

American).  According to the governing Joint Municipal Zoning Ordinance ("JMZO"), Thorpe

---

[1] Unless otherwise stated, the following facts are drawn from the joint "Statement of Stipulated Material Facts."  *See* Doc. No. 46.

Farm is zoned CM-Conservation Management.[2]  In 2000, the previous owners entered into

conservation easements; one with Bucks County and the other with the Township.  The

easements restrict Thorpe Farm to agricultural uses, as well as uses in effect in 2000.

After purchasing the property, Plaintiff Dale Thorpe advised Defendant Kuhns that he

intended to expand the uses of Thorpe Farm.  Plaintiffs allege that Defendants then began a

campaign to thwart Plaintiffs' efforts to make Thorpe Farm profitable, identifying some 23

contacts between 2007 and 2014, which Plaintiffs describe as "enforcement actions."[3]  These

range from denials of permits to the issuance of enforcement notices and citations, to what

Plaintiffs describe as threats of legal action.[4]  It appears the first incident occurred in October

2007, when Defendant Kuhns saw signs advertising a deer processing business at the Farm for

butchering deer shot by hunters.  On October 19, 2007, Kuhns requested copies of any

certificates or license the Thorpes held from the Pennsylvania Department of Agriculture relating

to deer processing; Plaintiffs halted the deer processing business.  That same day, Kuhns told

Dale Thorpe that the storage of truck tractors and tractor trailers by third parties violated the

conservation easement and the JMZO, that the installation of a neon sign at the Thorpe Farm

produce stand violated the JMZO, and that signs installed at the intersection of Stoneybrook and

River Roads violated the JMZO.  Defendant Kuhns directed the Thorpes to resolve these issues

by December 1, 2007.  Plaintiffs removed the neon sign, but did not comply with the other

directives.

---

[2] The JMZO was jointly adopted in 1983 by Newtown Township, Wrightstown Township, and Upper Makefield Township.

[3] Plffs.' Answer to Summ. J. at 1-3.  Doc. No. 50.

[4] *Id.* at 2.

Other disputes followed over the electrical wiring at the Farm's produce stand; the denial of a permit for a timber harvest; more sign issues; the denial of a zoning permit for a metal fabricating business with a nonconforming wood stove; improper allegedly commercial stockpiling of soil and other material; non-permitted use of the Farm by contractors; improper storage; and so forth. There was also a substantial back and forth about required repairs after various buildings were damaged by storms in 2012 and 2013; another building burned to the ground after a fire in 2012.

Significant attention is devoted to a proposed Halloween attraction in 2011 featuring a haunted house, hayride, and corn maze. Tony Gardner, the operator of the Festival of Fears, submitted an application in May 2011, to operate a haunted house inside a pole barn on Thorpe Farm; the permit was denied because the barn was less than 150 feet from Stoneybrook Road, which would require a zoning variance as set forth in an October 2007 Amendment to the JMZO.[5] Neither Gardner nor the Thorpes applied for a variance, and the Fire Marshal also advised Gardner that a fire suppression system would be required. In July 2011, Gardner applied instead for a zoning permit for a hayride and corn maze on Thorpe Farm. The parties disagreed as to the scope of the event, with Kuhns advising that a zoning variance would be required for live, amplified entertainment. Again, no request for a variance was filed. In October 2011, Kuhns issued a notice setting forth alleged zoning violations related to the event. Kuhns also stated that a traffic plan had to be approved by the Township Police Department, but the Police

_____

[5] The Amendment, JMZO No. 2006-05, was jointly enacted by the participating municipalities and addresses roadside stands, agricultural sales of farm products, and agricultural entertainment. As is relevant to this litigation, the Amendment provides that "[n]o activity, event or structure used for an agricultural entertainment use shall be located within one hundred fifty (150) feet of a right-of-way line or residential property line, except for parking areas which may be located within fifty (50) feet of a right-of-way line or residential property line." The Amendment also provides that "[a] traffic control plan must be submitted to and approved by the Township Police Department prior to receiving a permit for an agricultural entertainment use." Compl. Ex. 1 at 3-4.

Chief testified that the Police Department is not required to approve parking plans, and was

unaware of any other instance of approval being required.[6]

There are other farms in the Township that are zoned CM, including Ely Farm, Tierney

Farm (also known as Birchwood Farms), Gunser Farm (also known as Active Acres Farm), and

Slack Farm. The Elys grow crops, raise cattle and hogs, manufacture cheese, process livestock

and deer (the deer are killed by hunters), and sell the products on a farm store. In 1992, the Elys

applied for a zoning permit for the farm store, which Defendant Kuhns denied. The Elys

appealed and obtained a variance that allowed the farm store to open with limitations on the

number of animals to be raised and slaughtered. Defendant Kuhns counted the animals on a

quarterly basis. The Elys were required to plant trees and bushes to buffer the view of propane

tanks and solar panels, and the Pennsylvania Department of Agriculture inspects the deer

processing operation. The Ely farm store has a fire suppression system, and does not rent any

portion of the farm to others for commercial purposes.

Dr. Michael Tierney, a veterinarian, operates his practice from Tierney Farm, whose

other activities include the raising of cattle, pigs, and chickens, the manufacture of dairy

products, and the operation of a farm store. The Tierneys were required by Defendants to

remediate one pond, and to obtain approvals from the Township and the Pennsylvania

Department of Environmental Protection to expand and improve another. Defendant Kuhns

denied an application to construct a pole barn because the proposed location was outside a

building set back line. Defendant Kuhns also denied an application to construct a layer house for

chickens; the Tierneys successfully applied for relief from the Township Zoning Hearing Board.

---

[6] Kuhns Dep. Day 2 at 83-85; M. Schmidt Dep. at 16-18. However, as already noted, the 2007 Amendment to the JMZO requires approval of parking plans for agricultural entertainment events.

The Tierneys did not have a mercantile license for their farm store until 2015, when Bucks County officials insisted that they secure a license from the County. Tierney Farm does not have any non-agricultural businesses or agricultural entertainment, although educational tours for students are conducted.

Gunser Farms also operated a seasonal farm stand; after the death of William Gunser in 2015, one of the original owners, his widow, Eleanor Gunser, did not operate the stand. In 2016, Eleanor Gunser's daughter, Christine Gunser, applied for a zoning permit to operate the farm stand in her name; Defendant Kuhns approved the permit based upon that representation.

In 1993, nearly two decades before Defendant Kuhns blocked Halloween entertainment at Thorpe Farms, he denied an application for a hayride, corn maze, and live entertainment at Gunser Farms. The Gunsers appealed to the Township Zoning Board, which granted a variance provided that there was no live, amplified entertainment. The Gunsers successfully appealed again, to the Court of Common Pleas of Bucks County, which struck the ban on live, amplified entertainment. The Gunsers have operated the event every year, but in 1997, the Township's Fire Marshal refused to authorize a haunted house until a fire suppression system was arranged; the property, including the haunted events, are inspected on a yearly basis.

The Slacks of Slack Farm grow crops, raise chickens, and have operated the Milk House Farm Market since 2008. Brenda Slack did not apply for a zoning permit for the market because she assumed she did not need permission from the Township; she did apply for a directional and advertising sign, and received a permit from Defendant Kuhns. A Slack relative operates T&T Tree Service, Inc., on Slack Farm.

5

## II.  LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[7] A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[9] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[11] Further, a court may not weigh the evidence or make credibility determinations.[12] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[13] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[14] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[15]

---

[7] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[8] Fed. R. Civ. P. 56(a).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10] *Id.*

[11] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[12] *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[14] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[15] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## III.   DISCUSSION

The Fourteenth Amendment to the Constitution of the United States, through the Due Process and Equal Protection clauses, protects citizens from arbitrary, capricious, and unequal treatment by state actors.[16]  Plaintiffs argue that Defendants have violated their constitutional rights and also tortiously interfered with contractual relations in violation of Pennsylvania common law, by preventing them from processing deer, interfering with their ability to operate the Farm Store, blocking the haunted attractions, taking action against individuals and businesses that rented space at Thorpe Farm, subjecting them to unreasonable inspections, and exhibiting bias.

### A.   Due Process

The Due Process Clause provides that a state actor may not "deprive any person of life, liberty, or property, without due process of law."[17]  In this case, Plaintiffs assert a claim for substantive due process, which arises where there is a deprivation of a protected property interest by executive action that is arbitrary, or conscience shocking, in a constitutional sense.[18]  The Court of Appeals has stated that the "shocks the conscience" test is not precise and depends upon the factual context, but is "designed to avoid converting federal courts into super zoning tribunals." [19]  Evidence that zoning officials "pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly

---

[16] U.S. Const. amend XIV; 42 U.S.C. § 1983.

[17] U.S. Const. amend XIV, § 1.

[18] *Connection Training Serv. v. City of Phila.*, 358 F. App'x 315, 319 (3d Cir. 2009); *Gottlieb v. Laurel Highlands School Dist.*, 272 F.3d 168, 172 (3d Cir. 2001).

[19] *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (citations omitted).

increased tax assessments; and that they maligned and muzzled" property owners does not shock

the conscience unless it is done with an improper motive such as self-dealing or racial bias, or is

otherwise the "most egregious official conduct."[20]  The unfair application of zoning

requirements, without more, does not meet the standard.[21]

Thus, even if the Court were to accept Plaintiffs' arguments that Defendants acted

unfairly toward them in the enforcement of zoning and other land-use regulations, Plaintiffs have

not produced evidence from which a reasonable jury could conclude that it was animated by

corrupt motives or by racial bias. There is no evidence that Dale Thorpe's Native American

heritage motivated the actions of Defendant Kuhns or anyone associated with the Township.  In

his deposition, Dale Thorpe testified that Defendant Kuhns told him during a dispute over signs

and brush that "prominent people . . . didn't like that I was there and what I'm doing."[22]  Kuhns

did not say that the "prominent people" were displeased with Dale Thorpe because he was

Native American.[23]  The only negative comments cited by Dale Thorpe were that "somebody

complained about the Native American drumming and one neighbor walking one day made a

comment to me that it just takes one bad Indian."[24]  However, there is no evidence that

Defendants took any action against Thorpe Farm based on complaints about drumming, and the

---

[20] *Id.* at 286.

[21] *Miller v. Pocono Ranch Lands Property Owners Ass'n, Inc.*, 557 F. App'x 141, 144-45 (3d Cir. 2014) (citing *Eichenlaub*, 385 F.3d at 286).

[22] D. Thorpe Dep. Day 1 at 63-64.

[23] *Id.* at 67.  Kuhns testified at his 2016 deposition that he had not known that Dale Thorpe was Native American until "fairly recently."  Kuhns Dep. Day 1 at 57.  The conversation recounted by Dale Thorpe regarding "prominent people" occurred "early on."  D. Thorpe Dep. Day 1 at 64.

[24] D. Thorpe Dep. Day 1 at 66.

offensive comment from the neighbor cannot fairly be attributed to Defendants.[25] Without some

basis for concluding that Defendants acted with discriminatory intent, Plaintiffs have not shown

that Defendants' actions shock the conscience.[26]

Plaintiffs allege as a separate due-process violation the 2007 Amendment to the JMZO,

which had the effect of scuttling the haunted attraction in 2011 because it required that buildings

used for agricultural entertainment be set back 150 feet from a public right-of-way. Plaintiffs

argue that this amendment is a facial violation of substantive due process and there is no rational

basis for it.[27] Dale Thorpe testified in his deposition that people from the Township told him that

the provision was added to affect the Thorpes because it only affected Thorpe Farm and because

"the township had other plans for the property."[28] The Amendment, which was adopted by all

three municipalities in 2007, contains various provisions of general applicability directed to

commercial agricultural uses. There is no evidence from which a reasonable jury could conclude

---

[25] Plaintiffs also cite an incident in 2013, when Defendant Kuhns met in his office with a contractor for Thorpe Farms and three other men about the enforcement actions against Thorpe Farms. Afterward, it appears that Kuhns, or someone else in the Township Building, reported to the Chief of Police about the visit from the men, all of whom were African American, as noted on the incident report. *See* Kuhns Dep. Ex. 95 (incident report). There are no other details shedding light on this incident, and Defendant Kuhns in deposition apparently did not recall reporting the visit. Kuhns Dep. Day 2 at 158-68. Although strange, this incident would not be sufficient evidence from which a reasonable factfinder could conclude, as Plaintiffs would argue, that Kuhns harbors racial animus in general, and therefore animus against Native Americans. Defendants also note that Dale Thorpe filed an incident report with the police in 2015 when a cousin of the contractor and Dale Thorpe had a disagreement over the ownership of a horse and Dale Thorpe felt that the cousin had threatened him. The incident report from that occasion described Dale Thorpe as "white" (not Native American) and the other person as "black." Defs.' Supp. App'x Ex. 13 (incident report).

[26] *See Marjac LLC v. Trenk*, 380 F. App'x 142, 147 (3d Cir. 2010) (evidence sufficient at summary judgment where the township's attorney made "general comments that Italians aren't the best of people, they're connected to the mob").

[27] Plaintiffs also argue that Defendants failed to produce copies of the minutes of the Township Planning Commission where the Amendment was discussed, and which was attended by Kuhns, who Dale Thorpe testified was aware of the plans to offer the haunted attractions. However, the discovery deadline has passed, and Plaintiffs should have sought relief from the Court if Defendants did not comply with discovery requests.

[28] D. Thorpe Dep. Day 2 at 251.

that the Amendment was intended to target the Thorpes and was held in readiness until 2011

when it could be used against them.

Plaintiffs also take issue with the manner in which Defendants interpreted the 150-foot

setback requirement. But the "attempted enforcement of an allegedly unreasonable interpretation

of the [JMZO], even if directly contrary to Pennsylvania law, would be merely a violation of

state law. Such actions do not constitute a 'truly irrational' governmental action giving rise to a

substantive due process claim."[29] Plaintiffs have not established that the interpretation violates

state law, or even that it is necessarily irrational.

"A substantive due process violation occurs if a government official engages in 'an abuse

of executive power so clearly unjustified by any legitimate objective of law enforcement' that it

is barred by the Fourteenth Amendment."[30] Because Plaintiffs have not shown such a violation

in this case, summary judgment in favor of Defendants is warranted.

### B.      Equal Protection

The Equal Protection Clause "'prohibits selective enforcement of the law based on

considerations such as race.'"[31] Here, Plaintiffs allege that they have been intentionally treated

differently from other similarly situated landowners and that there is no rational basis for the

difference in treatment.[32] "Persons are similarly situated under the Equal Protection Clause

---

[29] *Giuliani*, 238 F. Supp. 3d at 702.

[30] *Button v. Snelson*, 679 F. App'x 150, 153 (3d Cir. 2017) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).

[31] *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).

[32] *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

when they are alike in all relevant aspects."[33] Plaintiffs have argued in effect that other

landowners "have not been held to the same rigorous procedures" that were applied to activities

conducted at Thorpe Farm.[34] This claim may be viable even without evidence of racial bias if

Plaintiffs can show that they are a "class of one," where they have "been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in

treatment," for example, where the official conduct was "irrational and wholly arbitrary."[35]

The standard is a difficult one to meet: "rational-basis review in an equal protection

analysis is not a license for courts to judge the wisdom, fairness or logic" of the challenged

actions.[36] As recently noted in this District, "[t]he irrational and wholly arbitrary standard is

difficult to meet in a land use case and it 'may be very unlikely that a claim that fails the

substantive due process test will survive under an equal protection approach.'"[37]

There is some evidence that would tend to support the Thorpes' belief that they have

been treated unfairly. But the record does not reveal the campaign of harassment that Plaintiffs

seek to portray, or that would elevate this case to the level of a constitutional violation. For

example, according to Plaintiffs' own chronology, there was a period of more than two years

between 2008 and 2010 when no actions were reported, as well as other periods of many months

without any reported incidents between Plaintiffs and Defendants.[38] The evidence also

---

[33] *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (internal citations and quotation marks omitted).

[34] *Eichenlaub*, 385 F.3d at 286.

[35] *Village of Willowbrook*, 528 U.S. at 564-65.

[36] *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (internal quotation marks and citation omitted).

[37] *Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 705 (E.D. Pa. 2017) (quoting *Eichenlaub*, 385 F.3d at 287).

[38] Dale Thorpe testified in his deposition that Township officials often arrived unannounced at the property; apparently many of these visits did not result in enforcement actions. D. Thorpe Dep. Day 1 at 251-54.

demonstrates that repairs were needed to certain buildings on Thorpe Farms, and that once

repairs were made, Plaintiffs received the necessary approvals to proceed.[39] With regard to

renters, Marazzo Landscaping, a tenant when Plaintiffs bought Thorpe Farm remains a tenant,

which is consistent with the conservation easement.[40] Dale Thorpe acknowledged that the wood-

burning stove installed by the metal fabricating business tenant was a fire hazard;[41] it was the

smoke from that stove that drew Defendants' attention to the business, which Defendants

maintained was not a permitted use on the property.

Although the other CM-zoned farms also had periodic zoning disputes with Defendants,

Plaintiffs argue that the owners of these farms are similarly situated and have been treated more

favorably, for example with regard to the operation of farm stores. But the evidence shows that

the Township tried to block the haunted attractions at Gunser Farms, that the farm stores on other

properties are inspected by the Fire Marshal, and that other properties have had zoning disputes

with the Township. The owners of the other farms also sought variances or otherwise appealed

actions taken against them in some circumstances. The Thorpes did not.[42]

The evidence could perhaps support a finding that Plaintiffs have had more difficulties

with Defendants, but crucially, they "have not shown that the Township's actions were

'irrational and wholly arbitrary' or that [P]laintiffs were intentionally singled out for adverse

---

[39] *See, e.g.*, Kuhns Dep. Day 2 Ex. 102 & 103 (issuing certificate of occupancy and memorandum of approval of fire safety code inspection for the Farm Store in 2013); D. Thorpe Dep. Day 2 at 83-85 (permits approved for electrical and sheetrock work at the Farm Store in 2008).

[40] D. Thorpe Dep. Day 1 at 37.

[41] D. Thorpe Dep. Day 1 at 152.

[42] For example, after Kuhns wrote a letter stating that licensing was required for deer processing, Dale Thorpe disagreed, but did not pursue the matter because "I didn't want to have to deal with any court. I didn't have time." *Id.* at 78.

treatment based on considerations that are wholly divorced from any legitimate government concern."[43] Indeed, Plaintiffs themselves point out that the Township is generally concerned about commercial activity and traffic, and is very concerned about the traffic generated by the Halloween events at Gunser Farms.[44] Defendants have offered legitimate, rational bases for their actions. It is not the role of the federal courts to determine whether any particular land-use enforcement action was warranted. Plaintiffs could have followed the applicable state-law appeals processes, as other property owners did successfully, but chose not to do so. Plaintiffs may disagree with the actions of Township officials, particularly Defendant Kuhns and the Fire Marshal, but they have not produced evidence from which a reasonable jury could conclude that Plaintiffs have met the high bar of proving that Defendants had not shown a "reasonably conceivable state of facts that could prove a rational basis for the classification."[45] Therefore, summary judgment will be granted in favor of Defendants and against Plaintiffs.

## C.     Tortious Interference with Contractual Relations

Having granted summary judgment with regard to the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claim. Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction …" In exercising its discretion to accept or decline supplemental jurisdiction over a

---

[43] *Guiliani*, 238 F. Supp. 3d at 705 (quoting *Village of Willowbrook*, 528 U.S. at 565).

[44] Plff. Opp. Summ. J. at 8-9.

[45] *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. Appx. 251, 259 (3d Cir. 2010) (internal quotation marks and citation omitted).

claim, a court "should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"[46]

Under the circumstances of this case, the Court determines that these principles are best served by declining to exercise supplemental jurisdiction over the state-law claim. As discussed above, the issues of state and local governance and land-use regulations and ordinance raised in this case are fundamentally questions for the state court where, as here, Plaintiffs have failed to show a constitutional violation. The claim for tortious interference will be dismissed without prejudice to its assertion in the appropriate state court.

## IV.    CONCLUSION

Plaintiffs have failed to muster evidence from which a reasonable jury could conclude that Defendants violated Plaintiffs' constitutional rights, and Defendants' motion for summary judgment will be granted as to Counts I, II, and III. Because the disputes between the parties are quintessentially those of state law, the Court declines to exercise jurisdiction over the remaining state-law claim, and Count V will be dismissed without prejudice. An order will be entered.

---

[46] *Growth Horizons, Inc. v. Del. County*, 983 F.2d 1277, 1284 (3d Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).